UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALOMON LOPEZ RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | No. 1:17-cv-00228-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

### I. **Introduction**

Plaintiff Salomon Lopez Rodriguez seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II and Supplementary Security Income ("SSI") pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 13 and 14. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal is denied.

///

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

## II. Procedural Background

On June 22, 2012, Plaintiff filed applications for disability insurance and supplemental security income. AR 37. In both applications he alleged disability beginning March 11, 2009. AR 37. The Commissioner denied the applications initially on November 19, 2012, and upon reconsideration on July 2, 2013. AR 37. On August 7, 2013, Plaintiff filed a timely request for a hearing. AR 37.

Administrative Law Judge Cynthia Floyd presided over administrative hearings on September 30, 2014, and June 3, 2015. AR 52-76, 77-99. Plaintiff, represented by counsel, appeared and testified through an interpreter at both hearings. AR 24. An impartial vocational expert, Cheryl Chandler, appeared and testified at the 2014 hearing. AR 52. Another impartial vocational expert, Judith Najarian, appeared and testified at the 2015 hearing. AR 77.

On July 1, 2015, the ALJ denied Plaintiff's applications. AR 37-46. The Appeals Council denied review on December 7, 2016. AR 19-22. On February 16, 2017, Plaintiff filed a timely complaint seeking this Court's review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

## III. Factual Background

### A. Plaintiff's Testimony

Plaintiff (born August 6, 1953) immigrated to the United States from Honduras. AR 59-60. He does not speak much English. AR 60. In the fifteen years prior to applying for disability benefits, Plaintiff did various types of farm work. From 2000-2009, he worked for Paramount Farm Management operating a tractor and sometimes spraying water for irrigation. AR 61. In performing that work Plaintiff lifted and carried as much as fifty pounds. AR 61. In 2009, Plaintiff was injured in three separate on-the-job accidents. AR 62. After the last accident in which Plaintiff fell from a motorcycle[2] and injured his left shoulder, he no longer has full motion of his left arm. AR 62-63.

///

---

[2] Irrigation workers use motorcycles to travel the orchards while checking irrigation apparatus.

Since Plaintiff had a stroke, his right side as a whole is weak and frequently painful. AR 66. He can sit for no more than 20 minutes before his right leg and buttock become numb, requiring him to stand up. AR 63. Plaintiff experiences unusual pain in three toes and finds it hard to put weight on them. AR 64. He also experiences numbness in his right hand. AR 64. He cannot stand in one place and needs to keep moving around. AR 68.

Plaintiff lives with his wife in a single family home. AR 56-57. He is responsible for a variety of household tasks, including taking out the garbage and mowing the small front yard. AR 66-67. He takes walks as his doctor instructed him, but stops if his toes become painful. AR 67. Plaintiff takes frequent rests throughout the day but rarely lies down to rest. AR 68-69.

Although Plaintiff routinely lifted and carried up to 50 pounds at his former job, he can now lift only 25 to 30 pounds. AR 68. He sometimes drops things because his right hand is unreliable. AR 68.

### B. Disability Reports

In a third party disability report, Plaintiff's daughter Damaris Velez reported that Plaintiff experienced constant pain and numbness (like the limb is "asleep") in his right arm and leg. AR 389. His legs worsened if he sat for more than fifteen minutes at a time. AR 389. He was forgetful and repeatedly said the same thing. AR 389. He slept poorly. AR 390. Plaintiff was easily irritated. AR 394.

Ms. Velez reported that Plaintiff experienced difficulty lifting, squatting, sitting, climbing stairs and remembering. AR 394. He could lift about twenty pounds and walk about one-half mile. AR 394.

Plaintiff's disability report was consistent with the report submitted by Ms. Velez. AR 403-11.

### C. Medical Records

In about 1996, Plaintiff experienced a minor heart attack with cardiac bypass surgery. AR 436, 458. In the years afterward he did not experience follow-up medical care. AR 436. From June 19-21, 2012, Plaintiff was treated for a suspected cerebrovascular incident (stroke) at Sierra

View District Hospital, Porterville, California. AR 436. His presenting symptoms were right-side weakness and facial droop. AR 436. Following x-ray and MRI studies (AR 449-52), Alla Liberstein, M.D., diagnosed an acute nonhemorrhagic infarct in the middle cerebral artery distribution, medial left temporal lobe, left occipital lobe, and left thalamus. AR 436. After finding no neurological weakness on examination, Dr. Liberstein opined that Plaintiff likely did not develop a neurologic deficit. AR 436. In the course of Plaintiff's hospitalization medical staff also identified hypertension, diabetes, atherosclerotic heart disease, leukocytosis, bronchitis, and dyslipidemia. AR 436.

Plaintiff received follow-up care from Anthony Aguirre, M.D., beginning in January 2013. AR 483-503, 509-38, 571-83, 602-07. Because he lacked medical insurance Plaintiff had not seen a doctor since his June 2012 hospitalization and was taking only aspirin as medication. AR 501. Dr. Aguirre prescribed Lisinopril for Plaintiff's high blood pressure. AR 503. Plaintiff complained of tingling and numbness on his right side but denied neurological symptoms. AR 496.

In February 2013, Plaintiff's blood pressure was good. AR 493. Plaintiff declined a referral for physical therapy since he had no money to pay for it. AR 495. Dr. Aguirre advised Plaintiff of some exercises that he could do at home. AR 495.

Plaintiff's blood pressure continued to be good in April 2013. AR 490. Dr. Aguirre gave Plaintiff Gabapentin, which had helped in the past with the numbness on the left side. AR 490.

In May 2013, Plaintiff complained of slight right shoulder pain that occurred when he moved the shoulder. AR 487. The pain was new, and there was no sign of trauma. AR 487. Dr. Aguirre suggested Tylenol for the pain and encouraged Plaintiff to stretch the shoulder. AR 489. After lab tests revealed high A1C, glucose and cholesterol, Dr. Aguirre added Zocor (a statin) and increased the dosage of Lisinopril. AR 484.

In July 2013, Dr. Aguirre noted that Plaintiff was taking his medications and doing well. AR 537. Plaintiff was managing his activities of daily living but said that "he sometimes feels he

///

is more forgetful." AR 537. In August 2013, the doctor noted that Plaintiff's right-sided weakness had resolved. AR 534.

On November 6, 2013, Plaintiff's leg felt weak and he lost his balance and fell, striking his left side. AR 531. The next day, Plaintiff saw Dr. Aguirre and complained of lower back and chest pain, with some mild pain when he took a breath. AR 531. Dr. Aguirre noted residual weakness on Plaintiff's right side and occasional numbness in the right leg. AR 531. Plaintiff had not improved much when he came for follow-up appointments on November 14 and 18, 2013. AR 527, 529. He was experiencing sharp, achy back pain radiating to his lower leg and right shoulder pain. AR 527. X-rays showed no broken ribs but revealed scoliosis and probable spasm in Plaintiff's back. AR 525-27. The doctor noted that Plaintiff could not afford to fill the pain prescription from November 7. AR 527, 529.

In January 2014, Dr. Aguirre noted that Plaintiff was experiencing shoulder pain on range of motion. AR 521. Plaintiff was using over-the-counter pain medication. AR 521. Gabapentin improved the tingling in Plaintiff's legs, but he continued to experience leg numbness. AR 521.

Dr. Aguirre continued to note residual right-side weakness in March and April 2014. AR 516, 518. In July 2014, Plaintiff reported right shoulder and lower back pain. AR 513. In August 2014, Dr. Aguirre noted lower back pain which was worse on range of motion. AR 509. Plaintiff reported morning stiffness. AR 509.

From August 2014 through May 2015, Dr. Aguirre noted that Plaintiff experienced chronic back pain and residual right-side weakness. AR 571, 575, 577, 579, 582, 602. X-rays of Plaintiff's back revealed mild degenerative changes. AR 573-74. Occasional numbness of the right leg continued. AR 577.

Plaintiff participated in four sessions of physical therapy in January 2015. AR 590-95. On January 23, 2015, Dusty Lee, PT, DPT, discharged Plaintiff noting that he continued to experience back pain and radicular symptoms down both legs but did not improve with physical therapy. AR 595.

///

On January 23, 2015, Plaintiff went to the emergency room of Sierra View District Hospital seeking treatment for his back pain. AR 585-589.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work

> experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.920(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. §§ 416.927; 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. §§ 416.920(a)-(f).

**VI.    Summary of the Hearing Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 37-46. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 11, 2009. AR 39. Plaintiff's severe impairments included "osteoarthritis unspecified in combination with lumbar spine degenerative of intervertebral disc, site unspecified, with spondylosis; and stroke syndrome, history of cerebral accident/infarct, resolved." AR 39. The severe impairment did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d); 416.925; and 416.926). AR 41. The ALJ concluded that Plaintiff had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; sit, stand and walk six hours; and occasionally climb

ladders, ropes and scaffolds. AR 41-45. Plaintiff must avoid concentrated exposure to unprotected heights. AR 41-45.

Plaintiff was capable of performing his past relevant work of packer and irrigator. AR 45. Accordingly, the ALJ found that Plaintiff was not disabled. AR 45.

### VII. **Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in finding that Plaintiff's testimony lacked credibility without providing clear and convincing reasons for her finding. The Commissioner responds that the ALJ properly discounted Plaintiff's testimony of disabling pain and other symptoms as inconsistent with both his activities of daily living and the medical evidence.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). To determine whether the ALJ's findings are supported by substantial evidence, a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p, 2017 WL 5180304 (Oct. 25, 2017). "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's

"medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 44. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Garrison*, 759 F.3d at 1014-15; *Smolen*, 80 F.3d at 1281. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).. *See also* Social Security Ruling ("SSR") 96-7p[3] (stating that an ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight"). It is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1991).

In assessing the claimant's credibility, the ALJ may use "ordinary techniques of

---

[3] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. See 2016 WL 1020935, *1 (March 16, 2016); 2016 WL 1131509, *1 (March 24, 2016) (correcting SSR 16-3p effective date to March 28, 2016); 2017 WL 5180304, *2 (Oct. 25, 2017) (further correcting SSR 16-3p). Although the second step has previously been termed a credibility determination, recently the Social Security Administration ("SSA") announced that it would no longer assess the "credibility" of an applicant's statements, but would instead focus on determining the "intensity and persistence of [the applicant's] symptoms." See SSR 16-3p, 2016 WL 1020935 at *1 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Social Security Rulings reflect the SSA's official interpretation of pertinent statutes, regulations, and policies. 20 C.F.R. § 402.35(b)(1). Although they "do not carry the force of law," Social Security Rulings "are binding on all components of the [SSA]" and are entitled to deference if they are "consistent with the Social Security Act and regulations." 20 C.F.R. § 402.35(b)(1); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citations and quotation marks omitted).
As the Ninth Circuit recently acknowledged, SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.) ("The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence.") SSR 16-3p became effective after the issuance of the ALJ's decision and after the Appeals Council had denied review in the instant case. When a federal court reviews the final decision in a claim, the district court is to apply the rules in effect when the decision was issued by the agency. SSR 16-3p, 2017 WL 5180304 at *1 (Oct. 25, 2017).

credibility evaluation," considering factors such a lack of cooperation during consultative examinations, a tendency to exaggerate, inconsistent statements, an unexplained failure to seek treatment, inconsistencies between the testimony and conduct; and inconsistencies between daily activities and the alleged symptoms." *Tonapetyan v. Halter,* 242 F.3d 242 F.3d1144, 1146; *see also Smolen*, 80 F.3d at 1284; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (including as factors claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties about the nature, severity, and effect of the alleged disabling symptoms). "If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Using Defendant's boilerplate language, the ALJ wrote that Plaintiff's "statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible for the reasons explained in the decision." AR 44. Although Plaintiff had complained of right-side weakness following his June 2012 stroke, the ALJ found that medical evidence indicated that the weakness had resolved within four months thereafter. AR 44. Physical examination revealed decreased sensation in Plaintiff's right leg but normal ranges of motion and full motor strength in all extremities. AR 44. The ALJ found no physiological basis for Plaintiff's pain allegations. AR 45. Plaintiff had received only conservative treatment, such as medication and physical therapy, and no extraordinary treatments, surgery or hospitalizations. AR 44.

The ALJ found Plaintiff's testified to daily activities that were not as limited as would be expected in light of the allegations of disabling symptoms and limitations. AR 44. Although

Plaintiff rested twenty to thirty minutes between chores, he was capable of performing his own personal care, taking out the trash, and mowing the lawn. AR 44. He was capable of shopping in public and walked around the block four times daily. AR 44.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for her findings and conclusion. As indicated above, however, the ALJ provided clear and convincing reasons for the conclusions she reached, all of which were based in the record as a whole. It is clear from Plaintiff's arguments that Plaintiff interprets the evidence in this case very differently than the ALJ. For example, the ALJ saw Plaintiff's ability to perform household chores during his wife's illness as evidence of his ability to perform those tasks while Plaintiff emphasizes his need to take rest breaks when he performed them Doc. 13 at 17;. similarly, Plaintiff contends that the ALJ should have given greater weight to evidence of Plaintiff's pain and weakness instead of relying on the evidence that his right-sided weakness had resolved four months after his stroke (Doc. 13 at 19); should not have considered Plaintiff's walks around the block to be evidence of his ability to walk because Plaintiff walked only because his doctor had ordered him to walk for exercise (Doc. 13 at 19); and, erroneously saw Plaintiff's conservative treatment to indicate the degree of Plaintiff's impairment only instead of adopting Plaintiff's position that further physical therapy would not have resulted in further improvement (Doc. 13 at 20). Thus, even though reasonable persons can construe the evidence presented in the case differently, the standard of review limits a district court's discretion on challenges to the ALJ's adverse credibility determinations. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson*, 402 U.S. at 401. If the evidence could reasonably support either outcome, a court may not substitute its judgment for that of the ALJ. *Flaten v. Sec'y, Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

The Court therefore is not in a position, given the above standards, to second guess the

ALJ's assessment of Plaintiff's credibility in this case.

### VIII. Evaluation of Medical Opinions to Determine Residual Functional Capacity

Plaintiff alleges that the ALJ failed to set forth specific and legitimate reasons for rejecting the opinions of the treating physician, Dr. Aguirre, the original examining consultants Drs. Wagner and Izzi, and the non-examining agency physicians. He adds that the ALJ further erred in relying on the opinions of Drs. Kravitz and Puestow, the non-examining physicians retained after the initial hearing who opined that Plaintiff was capable of working at the medium level of exertion. Defendant disagrees, explaining that the ALJ properly rejected as unsupported by the record the opinions of Dr. Aguirre, the consulting physicians, and the non-examining agency physicians.

#### A. Medical Opinions Presented Prior to Initial Hearing

At the initial hearing the record included medical opinions from two consultative professionals: Dr. Roger Wagner, M.D., who conducted a medical examination of Plaintiff, and Dr. Roger Izzi,[4] who conducted a psychological examination that included testing. The record also included the analysis and opinions of the non-examining state agency physicians who addressed Plaintiff's applications initially and on remand.

##### 1. Medical Consultative Examination

On October 17, 2012, internist Roger Wagner, M.D., performed a comprehensive examination of Plaintiff, who was assisted by a translator.[5] AR 471-75. Dr. Wagner confirmed that Plaintiff retained subjective feelings of right arm and leg weakness and numbness, with subjectively decreased sensation to light touch and pinprick on the *left* arm and leg.[6] AR 472. He was doing well with exercise, walking without difficulty around the block. AR 472. The doctor observed a subtle gait disturbance on the right and minimally positive Romberg sign.[7] AR 473.

---

[4] Dr. Izzi's opinion does not designate the type of educational degree that he received.

[5] Dr. Wagner noted that Plaintiff was taking only aspirin because he lacked funds to buy his prescribed medications. AR 472.

[6] The Court presumes that Dr. Wagner erred in referring to the left arm and leg rather than the right arm and leg. *See also* AR 472 (in evaluation of injured left shoulder, the doctor refers to the right shoulder).

[7] The Romberg sign is present "when a patient, standing with feet approximated, becomes unsteady or much more unsteady, with eyes closed." Stedmans Medical Dictionary 820310 (Westlaw 2014).

Plaintiff reported some difficulties with memory. AR 474. Dr. Wagner opined that Plaintiff was able to lift and carry 20 pounds occasionally and ten pounds frequently, and sit up to six hours and stand or walk up to six hours in an eight-hour work day. AR 475. In light of the positive Romberg sign, Plaintiff should not work around heights or heavy machinery. AR 475. Similarly, Plaintiff could perform all postural activities except balancing. AR 475. Plaintiff had no significant manipulative limitations except that fine feeling may be slightly impacted in the right hand. AR 475.

### 2. **Psychological Consultative Opinion**

Clinical psychologist Roger Izzi conducted a psychological evaluation on May 14, 2013. AR 478-81. Plaintiff was assisted by a translator. Although Plaintiff appeared dysphoric, he reported feeling depressed. AR 479. Dr. Izzi administered two tests: (1) the Trailmaking Test: Forms A & B, which assess visual scanning, tracking, and the ability to process in sequence, and (2) the Test of Nonverbal Intelligence (TONI-4). AR 480. Plaintiff completed only Form A of the Trailmaking Test, the results of which suggested a moderate degree of impairment. AR 480. Plaintiff stated that he was "confused" and could not complete Form B. AR 480. Plaintiff's performance on the TONI-4 placed him in the ninth percentile, approximately equivalent to an IQ of 80 or low average intelligence. AR 480.

Dr. Izzi opined that Plaintiff appeared capable of performing a simple and repetitive task consistently over an eight-hour workday. AR 480. Fluctuations in mood would limit Plaintiff's ability to perform a complex task consistently. AR 481. His mood disturbance would moderately affect his ability to get along with peers or be supervised in a work-like setting. AR 480-81. Plaintiff was capable of addressing attendance and safety issues relevant to a work environment. AR 481.

///

### 3. **Agency Physicians' Opinions**

Evaluating Plaintiff's initial application, agency physician Maria M. Legarda, M.D., opined that the following impairments were not severe: diabetes, hypertension, status post stroke

13

and status post surgery shoulder injury. AR 105-06. Accordingly, the agency did not opine on Plaintiff's residual functional capacity. AR 107. On reconsideration, Joan L. Bradus, M.D., opined that Plaintiff was "almost totally normalized" after his stroke and agreed that his impairments were not severe. AR 124. Psychologist Phaedra Cauros-Radin, Psy.D., found that Plaintiff's alleged memory deficits and confusion were not severe, and that Plaintiff could complete simple tasks. AR 124-25.

### B. Opinions Generated Following First Hearing

The ALJ solicited additional medical opinions following the first hearing. In response, Plaintiff produced the medical opinion of his treating physician Dr. Aguirre.

#### 1. Dr. Kravitz's Opinion

On December 1, 2014, the ALJ provided Alan Kravitz, an internist and cardiologist in Beachwood, Ohio, with a copy of the administrative record and nine pages of interrogatories. AR 551-562, 568. On December 5, 2014, Dr. Kravitz returned three completed pages. AR 564-66. Dr. Kravitz opined that Plaintiff had three impairments, diabetes, high blood pressure and cerebral infarct—resolved. AR 564. None of these impairments satisfied a listing. AR 565. Accordingly, Dr. Kravitz opined that Plaintiff was capable of a full range of medium work. AR 566.

#### 2. Dr. Aguirre's Opinion

In a physical medical source statement dated June 2, 2015, Dr. Aguirre diagnosed Plaintiff with osteoarthritis of the left spine, and stroke resulting in right-sided residual weakness. AR 608. Pain relief medications resulted in dizziness and drowsiness. AR 608. In Dr. Aguirre's opinion Plaintiff could sit ten minutes at a time and stand twenty minutes at a time before needing to move or change position, and required a job in which he was able to change position at will. AR 609. Dr. Aguirre did not offer an opinion on how long Plaintiff could sit, stand and walk in an eight-hour work day. AR 609. Plaintiff would need to take three or four unscheduled breaks of fifteen minutes in the course of a work day due to pain and numbness. AR 609. The doctor recommended that Plaintiff should use a cane or other assistive device due to pain and imbalance.

1  AR 610.

2  In Dr. Aguirre's opinion, Plaintiff could lift and carry ten pounds occasionally and less

3  than ten pounds frequently. AR 610. He could occasionally twist and stoop; rarely crouch, squat

4  and climb stairs; and never climb ladders. AR 610. He had significant limitations with reaching,

5  handling, and fingering. AR 610. Plaintiff could be expected to be off task more than twenty-

6  five per cent of the workday. AR 611.

Plaintiff's back pain rendered him incapable of even low stress work. AR 611. He would

8  have good days and bad and would be absent from work more than four days monthly. AR 611.

9  Dr. Aguirre summarized, "With patient's arthritis of lower back and residual right sided

10  weakness, he can't perform usual work which was farm labor." AR 611.

### 3. Dr. Puestow's Testimony

Eric Puestow, M.D., who is board certified in internal medicine and endocrinology,

provided expert testimony at the second agency hearing on June 3, 2015.[8] AR 82-94, 601. After

reviewing Plaintiff's medical records, Dr. Puestow testified that Plaintiff's diabetes and high

blood pressure were not severe regarding his ability to work since neither of those diseases had

resulted in any documented endocrine damage. AR 84. Plaintiff's back x-ray revealed some mild

wedging of the vertebral bodies at the thrombocolumbar junction, probably indicative of a fully

healed falling injury incurred at some point in Plaintiff's life. AR 84. Plaintiff's mild

degenerative disc disease was "age appropriate." AR 84. Plaintiff was able to move around well

and demonstrated an appropriate gait. AR 84. His neurologic function was "basically normal,"

and he demonstrated active activities of daily living. AR 84.

///

Plaintiff's stroke had fully resolved as demonstrated by a good range of motion, normal

gait and normal neurologic function. AR 84. Although medical records noted a slightly positive

Romberg test, Dr. Puestow was unconcerned since Plaintiff had no motor loss or loss of

---
[8] Dr. Kravitz did not testify at the second hearing. AR 80. Instead, Dr. Puestow, introduced simply as "a different medical expert," testified. AR 80. The administrative record does not explain the ALJ's decision to present testimony from Dr. Puestow rather than Dr. Kravitz.

15

coordination. AR 84-85.

The doctor opined:

> [E]ven though the degenerative changes in the spine are age appropriate, he may be expected to have some discomfort in the back with very heavy lifting. I've also considered the possibility that his Romberg test was mildly positive, so I would suggest that he should be limited to medium work, but also I would recommend just as a safety precaution that he not climb ropes, ladders or scaffolds or that he should not work at any unprotected height.

AR 86.

In response to questioning by Plaintiff's attorney, Dr. Puestow opined that physical therapy was unlikely to be beneficial to Plaintiff. AR 90.

### B. The ALJ's Evaluation of Medical Opinions

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The Court is not required to accept Plaintiff's characterization of his treatment records. Even if this Court were to accept that the record could support Plaintiff's opinion, the record amply supports the ALJ's interpretation as well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen*, 80 F.3d at 1285. The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating

16

professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The opinion of a non-examining physician may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Such independent reasons may include laboratory test results or contrary reports from examining physicians and Plaintiff's testimony when it conflicts with the treating physician's opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 755).

The ALJ complied with these legal provisions in her analysis of Plaintiff's residual functional capacity. The ALJ first concluded that "[t]here was no medical evidence of any severe impairment from the alleged onset date of March 11, 2009 through the date last insured of June 17, 2012." AR 42. Although Plaintiff was hospitalized for a stroke from June 19-24, 2012, a physical examination on the day he was discharged from the hospital showed normal neurological findings and no weakness. AR 42. Plaintiff received no follow-up care until January 2013 when Plaintiff told Dr. Aguirre that he was experiencing occasional shoulder pain and some tingling on the right side of his body. AR 42. Dr. Aguirre found Plaintiff in no distress, diagnosed hypertension and stroke syndrome, and prescribed Lisinopril and Gabapentin. AR 42. Plaintiff continued treatment with Dr. Aguirre, reporting some continued right-side numbness but otherwise doing well. AR 42. By August 2013, Plaintiff numbness had resolved. AR 43. Beginning in November 2013, Plaintiff began to experience low back pain attributed to mild degenerative changes/spondylosis. AR 43.

///

The ALJ gave little weight to Dr. Aguirre's opinion finding it exaggerated and extreme in light of the objective medical evidence. AR 43. "Dr. Aguirre's own treatment records do not support the functional limitations he imposed and they are contradicted by the claimant's own

17

testimony relative to activities of daily living." AR 43.  The ALJ found that Plaintiff's representations of his daily activities were not fully credible and that Plaintiff's daughter's third-party account was unpersuasive and inconsistent with objective evidence in the record.  AR 44.

The ALJ also gave little weight to Dr. Wagner's opinion, which was inconsistent with the medical record and Dr. Wagner's own examination, which reported "generally normal physical findings." AR 44.  The ALJ rejected the opinions of Dr. Wagner and agency physicians Maria Legarda, M.D., and J. Bradus, M.D., as being contrary to the opinions of Drs. Kravitz and Puestow.  AR 44.

In contrast the ALJ gave the greatest weight to Dr. Puestow's opinion, which was based on his review of the entire administrative record.  AR 43.  The ALJ found that opinion to be most consistent with the medical record and the overall evidence of record and to provide the most comprehensive functional assessment.  AR 43.  The ALJ also gave substantial weight to Dr. Kravitz's opinion, which she found to be consistent with the record, acknowledging that the "cerebral infarct had resolved, high blood pressure was resolved, and diabetes [was] uncomplicated." AR 43.  Accordingly, the ALJ accepted the opinions of Dr. Kravitz and Dr. Puestow that Plaintiff retained the residual functional capacity to perform medium work.  AR 41.

As is always the case in an appeal of the Commissioner's denial of disability benefits, Plaintiff understandably would construe the evidence differently than the ALJ.  Nonetheless, the ALJ's analysis complied with the legal principles set forth above which guided her analysis of the evidence in this case.  As stated above, even if the evidence could arguably support either interpretation the Court may not substitute its judgment for that of the Commissioner.  *Jamerson*, 112 F.3d at 1066

### IX. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of

Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff, Salomon Lopez Rodriguez.

IT IS SO ORDERED.

    Dated:   **December 6, 2018**                **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE